# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICIA GEERLINGS, as the Parent and/or Natural Guardian of QWG, a minor<br>738 Laurel Lane<br>Wayne, PA 19087, | :<br>:<br>:<br>:<br>: |
| ANDREW McLELLAN, as the Parent and/or Natural Guardian of HM, a minor<br>4159 Whitehorse Road<br>Malveren, PA 19355, | :   NO. _____<br>:<br>:<br>:<br>: |
| SARAH MARVIN, as the Parent and/or Natural Guardian of HA, a minor<br>1451 Russell Road<br>Paoli, PA 19301, | :<br>:<br>:<br>:<br>: |
| and | : |
| DAVID GOVERNANTI, as the Parent and/or Natural Guardian of SG, a minor<br>111 Sugartown Road<br>Devon, PA 19333 | :<br>:<br>:<br>:<br>: |
| *Plaintiffs,* | : |
| vs. | : |
| TREDYFFRIN/EASTTOWN SCHOOL DISTRICT,<br>940 W Valley Road #1700<br>Wayne, PA 19087 | :<br>:<br>:<br>: |
| *Defendant.* | : |

### COMPLAINT FOR DECLARATORY JUDGMENT
### <u>AND PERMANENT INJUNCTION</u>

Plaintiffs, by and through their undersigned counsel, seek a declaration that the mask

mandates promulgated by the Acting Secretary of the Pennsylvania Department of Health and

1

Defendant, Tredyffrin/Easttown School District ("Defendant"), are unlawful and a permanent injunction against enforcing the mandates , and in support thereof make the following averments.

## Parties

1. Plaintiffs are all parents of school-aged, minor children who wish to attend public schools in Tredyffrin School District in person.

2. Plaintiff David Governanti resides at 111 Sugartown Road, Devon, PA 1933.  His daughter wishes to attend her designated school located in the Tredyffrin/Easttown School District in person.

3. Plaintff Andrew McLellan resides at 4159 Whitehorse Road, Malveren, PA 19355.  His son wishes to attend his designated school located in the Tredyffrin/Easttown School District in person.

4. Plaintiff Alicia Geerlings resides at 738 Laurel Lane, Wayne, PA 19087.  Her son wishes to attend his designated school located in the Tredyffrin/Easttown School District in person.

5. Plaintiff Sarah Marvin resides at 1451 Russell Road, Paoli, PA 19301.  Her son wishes to attend his designated school located in the Tredyffrin/Easttown School District in person.

6. Defendant Tredyffrin/Easttown School Board is a duly elected school board, having offices at 940 West Valley Road, Suite 1700, Wayne, PA  19087.

7. Acting Secretary of the Pennsylvania Department of Health is the duly appointed Acting Secretary of Health, having offices at Health and Welfare Building, 8th Floor West, 625 Forster Street, Harrisburg, Pennsylvania 17120.

**Jurisdiction**

8.  This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 for violations of the United States Consitution.

**Introduction**

9.  On or about August 23, 2021, the Tredyffrin/Easttown School Board adopted its ARP ESSER Health and Safety Plan including a Covid-19 Mitigation Plan. The Covid-19 mitigation plan requires students to wear masks in school, unless they receive a religious or medical exemption. The plan calls for weekly testing of students who choose not to wear masks, whether or not they show signs of illness or have had contact with someone diagnosed with Covid-19. A copy of the Health and Safety Plan including the Covid-19 Mitigation Plan is attached as Exhibit A.

10. The plaintiffs aver that the School Board has no legal authority to require students to wear masks or to test students without their consent.

11. On August 31, 2021, the Secretary of Health issued an Order requiring students to wear masks in school "to prevent and control the spread of disease" and "to protect the ability of our schools to continue to educate our children, and of our children to receive in person instruction, in the safest environment possible." A copy of the August 31, 2021 Order is attached as Exhibit B.

12. The plaintiffs aver that the Secretary of Health and the Tredyffrin/Easttown School Board have no legal authority to require healthy students who are not infected to wear masks to prevent the transmission of communicable disease.

13. Plaintiffs wish to apply for religious exemptions on behalf of their children, but they cannot agree to the terms and conditions of the School District's religious exemption form, and the Order of August 31, 2021 has no religious exemption.

14. Plaintiffs aver that cloth face coverings have not been approved by the FDA as medical devices for preventing the transmission of viruses, that the School District's testing protocol also has not been approved by the FDA, and that any emergency use approval of a medical device product or testing protocol requires informed consent, which has not been obtained.

15. Plaintiffs aver that the medical exemption form approved by the School Board arbitrarily requires a blanket waiver of their children's privacy rights under HIPAA without justification.

16. The School Board should be enjoined from carrying out public health control measures that are not properly authorized under applicable law.

17. Absent the requested injunctive relief, the plaintiff's children have been and will be irreparably harmed in various ways.

18. Plaintiffs aver Plaintiffs aver that their children have been turned away from school for refusing to wear a mask and have been deprived of their right to a free public education.

19. Plaintiffs aver that their children have been made to wear a mask to receive a public education in violation of their religious beliefs.

20. Plaintiffs aver that their children have been made to wear face coverings that have not been approved as medical devices and can cause respiratory harm.

21. Plaintiffs aver that their children who seek a medical exemption from the mask requirement will be forced to share private medical information that has no relevance to their ability to wear a mask.

## COUNT I – Lack of Legal Authority to Require Masks

22. Defendant School Board adopted a Health and Safety Plan and Covid-19 mitigation plan on or about August 23, 2021.

23. The Health and Safety Plan (, which bears a date of July 30, 2021, states in part:

> Mask wearing requirements will be implemented or adjusted in accordance with guidance from CDC, PA DOH, CCHD and PDE while factoring in the following information:
> County vaccination rates
> County transmission rates
>
> Mask wearing is currently not required, other than on school buses or school vans transporting students. The district will continue to support anyone who wishes to wear a mask during the school or workday in any setting.

24. The Covid-19 mitigation plan, which bears a date of August 23, 2021, states:

The table below identifies District requirements for mask wearing, effective August 16, 2021.

| Location | Status |
|---|---|
| On a school bus or school vehicle | Required. School buses are considered public transit and thus masks are required for all riders. If mask wearing would create a risk to workplace health, |
| Indoors - all District buildings | Required for anyone over the age of 2, regardless of vaccination status. |

5

| Outdoors | Masking is optional but welcome during outdoor activities such as recess, activity or PE.<br><br>Outdoor events outside of the school day: CDC recommends that individuals who are not fully vaccinated should wear a mask if the outdoors event is crowded and involves sustained close contact. |
|---|---|
| Sports, extra-curricular, and co-curricular activities | Due to the varied nature of each activity, the Director of Safety & Student Services will work with the relevant building level staff (Principal, Athletic Director, advisors and others) in identifying masking requirements. Guidance from organizations such as PIAA and PMEA will be used. |

25. Each of the plaintiffs drove or sent their children to school on August 30, 2021, and in each case the school refused to allow the children to attend class in person and sent them home, because the children did not want to wear a face mask and the parents did not agree to the terms and conditions of the school district's religious exemption form.

26. On August 31, 2021, the Secretary of Health for the Commonwealth of Pennsylvania issued an Order requiring all students to wear masks in school "to prevent and control the spread of disease" and "to protect the ability of our schools to continue to educate our children, and of our children to receive in person instruction, in the safest environment possible." A copy of the August 31, 2021 Order is attached as Exhbit B.

27. Section 2 of the August 31, 2021 Order provides that "Each teacher, child/student, staff, or visitor working, attending, or visiting a School Entity shall wear a face covering indoors, regardless of vaccination status, except as set forth in Section 3."

28. Section 3 of the August 31, 2021 Order provides certain exemptions from the requirement to wear masks:

> The following are exceptions to the face covering requirements in Section 2. All alternatives to a face covering, including the use of a face shield, should be exhausted before an individual is excepted from this Order.

6

    A.    If wearing a face covering while working would create an unsafe condition in which to operate equipment or execute a task as determined by local, state, or federal regulators or workplace safety guidelines.

    B.    If wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability.

    C.    When necessary to confirm the individual's identity.

    D.    When working alone and isolated from interaction with other people with little or no expectation of in-person interaction.

    E.    If an individual is communicating or seeking to communicate with someone who is hearing-impaired or has another disability, where the ability to see the mouth is essential for communication.

    F.    When the individual is under two (2) years of age.

    G.    When an individual is:

        (1)    Engaged in an activity that cannot be performed while wearing a mask, such as eating and drinking, or playing an instrument that would be obstructed by the face covering; or

        (2)    Participating in high intensity aerobic or anaerobic activities, including during a physical education class in a well-ventilated location and able to maintain a physical distance of six feet from all other individuals.

    H.    When a child/student is participating in a sports practice activity or event, whether indoors or outdoors.

29.    The Secretary of Health cites the following authority for the August 31, 2021 Order:

> *See* section 5 of the Disease Prevention and Control Law, 35 P.S. § 521.5; section 2102(a) of the Administrative Code of 1929, 71 P.S. § 532(a); and the Department of Health's regulation at 28 Pa. Code § 27.60 (relating to disease control measures). Particularly, the Department of Health (Department) has the authority to take any disease control measure appropriate to protect the public from the spread of infectious disease. *See* 35 P.S. § 521.5; 71 P.S. §§ 532(a), and 1403(a); 28 Pa. Code § 27.60.

30.    Section 521.5 of the Disease Prevention and Control Law provides that:

> Upon the receipt by a local board or department of health or by the department, as the case may be, of a report of a disease which is subject to isolation, quarantine, or any other control measures in such manner and in such place ***as is provided by rule or regulation,*** the local board or department of health or the department shall carry out the appropriate control measures in such manner and in such place as is provided by rule or regulation.

35 P.S. §521.5. (emphasis added).

7

31. The Order of August 31, 2021 involves a "control measure" other than isolation or quarantine, namely face coverings, and therefore must be carried out "in such manner and in such place as is provided by rule or regulation."

32. The delegation of general powers to the Department of Health in 71 P.S. §532(a) and §1403(a) are not a substitute for the specific rules and regulations called for by 35 P.S. §521.5.

33. Notwithstanding the authorities on which the Secretary of Health relies, no rule or regulation exists authorizing the Secretary of Health to order persons to wear masks who are not already infected with, or under treatment for, a communicable disease.  See 28 Pa. Code §27.60.

34. The Chester County Department of Health has no authority to order students to wear masks in school for the same reason that the Secretary of Health does not have such authority.

35. The August 31, 2021 Order apparently supersedes the School District's Covid-19 Mitigation Plan.  However, if the August 31, 2021 Order is found to be invalid, it is likely that the School District will resume enforcing the Covid-19 Mitigation Plan.

36. Plaintiffs aver that there is no Pennsylvania statute or regulation that expressly or implicitly authorizes local education agencies to mandate the universal masking of students in school.

37. Defendant School Board adopted its Health and Safety Plan and Covid-19 Mitigation Plan, to comply with the Federal Department of Education's Interim Final Requirements for the receipt and use of ARP ESSER funds.  ARP ESSER stands for American Rescue Plan Elementary and Secondary School Emergency Relief.  A copy of the Interim Final Requirements is attached as Exhibit C.

38. The Interim Final Requirements state in part as follows:

> *Interim Final Requirement:* Under this requirement, each LEA [local education agency] that receives ARP ESSER funds must develop, submit to the SEA [state education agency] on a reasonable timeline determined by the SEA, and make publicly available on the LEA's website, a plan for the LEA's use of ARP ESSER funds. The plan, and any revisions to the plan submitted consistent with procedures established by the SEA, must include at a minimum a description of—

(1) The extent to which and how the funds will be used to implement prevention and mitigation strategies that are, to the greatest extent practicable, consistent with the most recent CDC guidance on reopening schools, in order to continuously and safely open and operate schools for in-person learning;

39. The reasons for the Interim Final Requirements are explained in part as follows:

The minimum requirements for the ARP ESSER plans ensure that LEAs are using ARP ESSER funds for their intended purposes, including whether and how they will use the funds specifically for COVID-19 prevention and mitigation strategies…

40. The Interim Final Requirements do not mandate the use of masks in elementary and secondary school.

41. The Interim Final Requirements do not authorize or require the recipients of ARP ESSER funds to require the use of masks in elementary and secondary school.

42. The Pennsylvania Department of Education's ARP ESSER State Plan, a copy of which is attached as Exhibit D, requires the State Education Agency to explain:

(i) how the SEA will support its LEAs implementing, to the greatest extent practicable, prevention and mitigation policies in line with the most up-to-date guidance from the Centers for Disease Control and Prevention (CDC) for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff."

43. The SEA has responded to this requirement as follows:

The Secretary of the DOH lifted the commonwealth's universal face covering order on June 28, 2021. As such, LEAs have the authority to determine local masking policies. Schools have been advised to follow CDC recommendations in making policy decisions.

44. Notwithstanding the SEA's response, there is no Pennsylvania statute or regulation that expressly or implicitly authorizes local education agencies to mandate the universal masking of students in school.

45. The Chester County Commissioners have not enacted an ordinance requiring students to wear masks in school.

46. For all the foregoing reasons, neither the Secretary of Health nor the School Board has the authority to require healthy students to wear masks in school.

### COUNT II – Religious Discrimination

47. The August 31, 2021 Order contains several exemptions for secular activities but contains no religious exemption from the requirement to wear masks.

48. As a result, the August 31, 2021 on its face favors secular activities such as sports, musical performance, and physical education over conscientious religious objections to wearing masks.

49. Plaintiffs aver that the disparate treatment of conscientious religious objectors cannot be justified by a compelling state interest where the state's rules and regulations do not authorize the Secretary of Health to order persons to wear masks who are not already infected with, or under treatment for, a communicable disease and where secular exemptions are recognized.

50. Before August 31, 2021, the Tredyffrin/Easttown School District recognized a religious exemption from the mask requirement and prepared a form which it required parents to sign to receive a religious exemption. A copy of the form for requesting a religious exemption is attached as Exhibit E.

51. The religious exemption form includes the following language:

> By not wearing a mask at school, my child may be at increased risk of quarantining, or causing other students to quarantine. The intent of the District Health & Safety Plan mask requirement is to reduce the likelihood of COVID-19 spread within the school.
> In deference to your request for a religious exemption for your child to wear a mask while indoors in a District building, a District representative will be in touch with you to discuss the implementation of the following alternative mitigation strategies:
> - Weekly COVID-19 testing administered at the school at no charge to the parent/guardian or documentation of weekly testing conducted by a healthcare provider.
> - Wearing of a face shield or other personal protection equipment (plastic barrier on the desk), to protect others from contracting COVID-19 and/or increased physical distance from others while indoors.
>
> In addition, virtual instruction may be required if the above strategies cannot be implemented.

52. Plaintiffs aver that none of the alternatives to masking are satisfactory, because they all infringe the free exercise of religion by treating students differently based on their religious objections to wearing masks.

53. Plaintiffs further aver that the testing protocol is not proven to be safe and effective to prevent the transmission of Covid-19 in school. Moreover, any Emergency Use Authorization of the testing protocol requires informed consent, which the religious exemption form does not provide.

54. Plaintiffs likewise aver that plastic face shields and plastic barriers are not proven to be safe and effective to prevent the transmission of Covid-19 in school. Any Emergency Use Authorization of plastic face shields and plastic barriers requires informed consent, which the religious exemption form does not provide.

55. For the foregoing reasons, the August 31, 2021 Order and the School District's Covid-19 Mitigation Plan impermissibly infringe the free exercise of religion under the First and

Fourteenth Amendments by students who conscientiously object to wearing masks on religious grounds.

### COUNT III – Face Coverings Are Not Authorized Medical Devices and May Not be Required without Informed Consent

58. The Secretary's Order sets forth a General Masking Requirement, which mandates that all individuals wear a face covering while indoors at a School Entity.

59. The Order does not specify what types of masks or face coverings are required to be worn, and instead includes a broad definition as follows:

> 'Face covering' means covering of the nose and mouth with material that is secured to the head with ties, straps, or loops over the ears or is wrapped around the lower face. A 'face covering' can be made of a variety of synthetic or natural fabrics, including cotton, silk, or linen. A 'face covering' may be factory-made, sewn by hand, or be improvised from household items, including, but not limited to, scarfs, bandanas, t-shirts, sweatshirts, or towels. While procedural and surgical masks intended for health care providers and first responders, such as N95 respirators, meet those requirements, these specialized masks should be reserved for appropriate occupational and health care personnel.

60. The School Board's COVID-19 mitigation plan requires masking and provides a table with what to "look for" as opposed to "don't use," along with a link to the CDC website for information regarding the proper use of masks.

61. Plaintiffs aver that a face covering or mask used to prevent the transmission of virus, such as COVID-19, fail to meet the FDA definition of a "medical device" for purpose of regulating the manufacture and marketing of medical devices.

62. The FDA defines a medical device as:

> An instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including a component part, or accessory which is:

1. recognized in the official National Formulary, or the United States Pharmacopoeia, or any supplement to them,
2. intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
3. intended to affect the structure or any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its primary intended purposes.

Section 201(h), Food Drug and Cosmetic Act

63. Plaintiffs aver the use of face coverings or masks is required as intended to mitigate and prevent disease, as detailed in the Secretary's Order.

64. The FDA requires an approval process for medical devices; it is unclear that any mask has been approved by the FDA for the prevention of the spread of COVID-19.

65. Numerous studies have been published regarding the ineffectiveness of mask-wearing to prevent the spread of COVID-19, as well as the dangers associated with wearing masks and face coverings.

66. Plaintiffs aver that wearing a mask is dangerous, and can lead to emotional, physical, and psychological health issues including, but not limited to, an increase in breathing resistance, increase in blood carbon dioxide, increase in heart rate, increase in respiratory rate, decrease in blood oxygen saturation, decrease in cardiopulmonary, decrease in empathy perception, impairment of skin barrier function with acne, itching, and skin lesions, feeling of exhaustion, feeling dampness and heat, headaches, dizziness, and drowsiness.

67. Peer-reviewed empirical research demonstrates cloth face coverings do not reduce the transmission of respiratory diseases.

68. Many face coverings and masks are ineffective because they do not adequately filter aerosol particles as small as corona virus particles.

69. Masks promote and increase the risk of wearer self-contamination involving COVID-19 as well as other dangerous viruses, pathogens and the like via contaminated hands, repeated use of the same mask, and accumulation of virus particles from wearer exhalation and inhalation of particles which may be in the air.

70. Studies demonstrate that compulsory mask wearing provides individuals with a deceptive feeling of safety and altruism and fails to prevent the spread of COVID-19.

71. The broad definition of Face Coverings in the draconian Order that consequentially suffocates civil liberties are completely at odds with scientific research associated with the ineffectiveness of face coverings and masks.

72. The existing discrepancies within the scientific and medical communities concerning efficiency and safety of mask wearing warrant a more thorough investigation especially in the context of a governmental mandate.

73. Plaintiffs aver that individuals have the right to refuse to wearing an unapproved medical device without consent.

74. With respect to the emergency authorization usage of products, Federal law requires the individuals be informed:

> (I) that the Secretary has authorized the emergency use of the product;
> 
> (II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

>   (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III), Federal Food, Drug, and Cosmetic Act.

75. The federal governments requires informed consent for the emergency authorization usage of products; however, the Pennsylvania Secretary of Health and School District are requiring students to wear unapproved medical devices without informed consent.

Respectfully submitted,

_____
**Obermayer Rebmann Maxwell & Hippel LLP**
Gary M. Samms, Esq. (#58096)
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101
(215)-665-3054
*Attorney for Plaintiffs*

GOVERNANTI
26

## VERIFICATION

I, David ~~Goverantti~~, hereby state under the penalty of perjury that to the best of my knowledge, information and belief, that the statements made in the foregoing Injunction are true and correct to the best of my knowledge, information and belief; and that these statements are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Date:   9/8/21

David ~~Goverantti~~
GOVERNANTI
DG

OMC\4847-2223-2570.v1-9/8/21

## **VERIFICATION**

I, Sarah Marvin, hereby state under the penalty of perjury that to the best of my knowledge, information and belief, that the statements made in the foregoing Injunction are true and correct to the best of my knowledge, information and belief; and that these statements are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Date:  9/8/21

_____
Sarah Marvin

## **VERIFICATION**

I, Alicia Geerlings, hereby state under the penalty of perjury that to the best of my knowledge, information and belief, that the statements made in the foregoing Injunction are true and correct to the best of my knowledge, information and belief; and that these statements are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Date:   9/8/2021

Alicia Geerlings

OMC\4847-2223-2570.v1-9/8/21

## VERIFICATION

I, Andrew McLellan, hereby state under the penalty of perjury that to the best of my knowledge, information and belief, that the statements made in the foregoing Injunction are true and correct to the best of my knowledge, information and belief; and that these statements are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Date: Sept. 8th, 2021

_____
Andrew McLellan

OMC\4847-2223-2570.v1-9/8/21