**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALICIA GEERLINGS, as the Parent and/or Natural Guardian of QWG, a minor<br>738 Laurel Lane<br>Wayne, PA 19087, | : : : : : | |
| ANDREW McLELLAN, as the Parent and/or Natural Guardian of HM, a minor<br>4159 Whitehorse Road<br>Malveren, PA 19355, | : : : : : | NO. _____ |
| SARAH MARVIN, as the Parent and/or Natural Guardian of HA, a minor<br>1451 Russell Road<br>Paoli, PA 19301, | : : : : : | |
| and | : : | |
| DAVID GOVERNANTI, as the Parent and/or Natural Guardian of SG, a minor<br>111 Sugartown Road<br>Devon, PA 19333 | : : : : : | |
| *Petitioners,* | : : | |
| vs. | : : | |
| TREDYFFRIN/EASTTOWN SCHOOL DISTRICT,<br>940 W Valley Road #1700<br>Wayne, PA 19087 | : : : : : | |
| *Respondent.* | : | |

**BRIEF IN SUPPORT OF PETITION FOR TRO AND INJUNCTIVE RELIEF**

Petitioners, by their undersigned counsel, seek a TRO and preliminary injunctive relief to prevent the Respondent, Tredyffrin/Eastown School District ("Respondent"), from enforcing the August 31, 2021 Order of the Acting Secretary of Health and Respondent's July 16, 2021

1

Covid-19 Mitigation Plan, both of which are in effect and both of which require all students to be masked in school.

**I.     There Is No Rule or Regulation in the Commonwealth Authorizing the Universal Mask Mandates Contained in the Department of .Health's August 31, 2021 Order and Respondent's Covid-19 Mitigation Plan.**

On August 31, 2021, the Secretary of Health for the Commonwealth of Pennsylvania issued an Order requiring all students to wear masks in school "to prevent and control the spread of disease" and "to protect the ability of our schools to continue to educate our children, and of our children to receive in person instruction, in the safest environment possible."

Section 2 of the August 31, 2021 Order provides that "Each teacher, child/student, staff, or visitor working, attending, or visiting a School Entity shall wear a face covering indoors, regardless of vaccination status, except as set forth in Section 3."

Section 3 of the August 31, 2021 Order provides certain exemptions from the requirement to wear masks:

> The following are exceptions to the face covering requirements in Section 2. All alternatives to a face covering, including the use of a face shield, should be exhausted before an individual is excepted from this Order.
>
> A.     If wearing a face covering while working would create an unsafe condition in which to operate equipment or execute a task as determined by local, state, or federal regulators or workplace safety guidelines.
>
> B.     If wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability.
>
> C.     When necessary to confirm the individual's identity.

  D. When working alone and isolated from interaction with other people with little or no expectation of in-person interaction.

  E. If an individual is communicating or seeking to communicate with someone who is hearing-impaired or has another disability, where the ability to see the mouth is essential for communication.

  F. When the individual is under two (2) years of age.

  G. When an individual is:

   (1) Engaged in an activity that cannot be performed while wearing a mask, such as eating and drinking, or playing an instrument that would be obstructed by the face covering; or

   (2) Participating in high intensity aerobic or anerobic activities, including during a physical education class in a well-ventilated location and able to maintain a physical distance of six feet from all other individuals.

  H. When a child/student is participating in a sports practice activity or event, whether indoors or outdoors.

The Secretary of Health cites the following authority for the August 31, 2021 Order:

> *See* section 5 of the Disease Prevention and Control Law, 35 P.S. § 521.5; section 2102(a) of the Administrative Code of 1929, 71 P.S. § 532(a); and the Department of Health's regulation at 28 Pa. Code § 27.60 (relating to disease control measures). Particularly, the Department of Health (Department) has the authority to take any disease control measure appropriate to protect the public from the spread of infectious disease. *See* 35 P.S. § 521.5; 71 P.S. §§ 532(a), and 1403(a); 28 Pa. Code § 27.60.

See Exhibit B, at p. 3.  Section 521.5 of the Disease Prevention and Control Law provides that:

> Upon the receipt by a local board or department of health or by the department, as the case may be, of a report of a disease which is subject to isolation, quarantine,

>or any other control measures in such manner and in such place *as is provided by rule or regulation,* the local board or department of health or the department shall carry out the appropriate control measures in such manner and in such place as is provided by rule or regulation.

35 P.S. §521.5. (emphasis added).

The Order of August 31, 2021 involves a "control measure" other than isolation or quarantine, namely face coverings, and therefore must be carried out "in such manner and in such place as is provided by rule or regulation."  The delegation of general powers to the Department of Health in 71 P.S. §532(a) and §1403(a) are not a substitute for the specific rules and regulations called for by 35 P.S. §521.5.  Notwithstanding the authorities on which the Secretary of Health relies, no rule or regulation exists authorizing the Secretary of Health to order persons to wear masks who are not already infected with, or under treatment for, a communicable disease.

The only rule or regulation of the Department of Health which is cited as authority for the August 31, 2021 Order is 28 Pa. Code § 27.60(a).  Section 27.60(a) provides that.

>The Department or local health authority shall direct isolation of a person or an animal with a communicable disease or infection; surveillance, segregation, quarantine or modified quarantine of contacts of a person or an animal with a communicable disease or infection; and any other disease control measure the Department or the local health authority considers to be appropriate for the surveillance of disease, when the disease control measure is necessary to protect the public from the spread of infectious agents.

(Emphasis supplied.)  Under this regulation, the Department of Health may isolate or quarantine persons who already have a communicable disease, and may employ *other control measures for the surveillance of disease*.  The term "surveillance" is defined in §27.1: "Surveillance of disease — The continuing scrutiny of all aspects of occurrence and spread of disease that are pertinent to effective control." *See* 28 Pa. Code §27.1

Surveillance measures and "continuing scrutiny" do not include masking students who are healthy and do not already have a communicable disease.  Nor does masking meet the definition of "isolation"

> The separation for the communicable period of an infected person or animal from other persons or animals, in such a manner as to prevent the direct or indirect transmission of the infectious agent from infected persons or animals to other persons or animals who are susceptible or who may spread the disease to others.

*See* 28 Pa. Code §27.1.

Section 27.60 simply does not authorize the Department or order universal masking as a measure to prevent the spread of disease.

Similarly, there is no regulation of the Department of Education that authorizes Respondent to order universal masking.

Respondent adopted a Health and Safety Plan and Covid-19 mitigation plan on or about August 23, 2021.  The Health and Safety Plan, which bears a date of July 30, 2021, states in part:

> Mask wearing requirements will be implemented or adjusted in accordance with guidance from CDC, PA DOH, CCHD and PDE while factoring in the following information:
> County vaccination rates
> County transmission rates
> Mask wearing is currently not required, other than on school buses or school vans transporting students. The district will continue to support anyone who wishes to wear a mask during the school or workday in any setting.

The Covid-19 mitigation plan, which bears a date of August 23, 2021, states:

> The table below identifies District requirements for mask wearing, effective August 16, 2021.

| Location | Status |
|---|---|

5

| | |
|---|---|
| On a school bus or school vehicle | Required.<br>School buses are considered public transit and thus masks are required<br>for all riders.<br>If mask wearing would create a risk to workplace health, safety or job duty, the driver may remove their mask. |
| Indoors - all District buildings | Required for anyone over the age of 2, regardless of vaccination status. |
| Outdoors | Masking is optional but welcome during outdoor activities such as recess, activity or PE.<br>Outdoor events outside of the school day: CDC recommends that individuals who are not fully vaccinated should wear a mask if the outdoors event is crowded and involves sustained close contact. |
| Sports, extra-curricular, and co-curricular activities | Due to the varied nature of each activity, the Director of Safety & Student Services will work with the relevant building level staff (Principal, Athletic Director, advisors and others) in identifying masking requirements. Guidance from organizations such as PIAA and PMEA will be used. |

Respondent adopted its Health and Safety Plan and Covid-19 Mitigation Plan, to comply with the Federal Department of Education's Interim Final Rule for the receipt and use of ARP ESSER funds. ARP ESSER stands for American Rescue Plan Elementary and Secondary School Emergency Relief. A copy of the Interim Final Rule is attached as Exhibit C.

The Interim Final Rule states in part as follows:

> *Interim Final Requirement:* Under this requirement, each LEA [local education agency] that receives ARP ESSER funds must develop, submit to the SEA [state education agency] on a reasonable timeline determined by the SEA, and make publicly available on the LEA's website, a plan for the LEA's use of ARP ESSER funds. The plan, and any revisions to the plan submitted consistent with procedures established by the SEA, must include at a minimum a description of—
>
> (1) The extent to which and how the funds will be used to implement prevention and mitigation strategies that are, to the greatest extent practicable, consistent with the most recent CDC guidance on reopening schools, in order to continuously and safely open and operate schools for in-person learning;

6

The Interim Final Rule does not mandate the use of masks in elementary and secondary school. The Interim Final Rule does not authorize or require the recipients of ARP ESSER funds to require the use of masks in elementary and secondary school. The Pennsylvania Department of Education's ARP ESSER State Plan, a copy of which is attached as Exhibit D, requires the State Education Agency to explain:

> (i)  how the SEA will support its LEAs implementing, to the greatest extent practicable, prevention and mitigation policies in line with the most up-to-date guidance from the Centers for Disease Control and Prevention (CDC) for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff."

The SEA has responded to this requirement as follows:

> The Secretary of the DOH lifted the commonwealth's universal face covering order on June 28, 2021. As such, LEAs have the authority to determine local masking policies. Schools have been advised to follow CDC recommendations in making policy decisions.

Notwithstanding the SEA's response, there is no Pennsylvania statute and no regulation of the Department of Education that expressly or implicitly authorizes local education agencies to mandate the universal masking of students in school for any reason.

In the absence of a pertinent regulation duly promulgated and approved by the Department of Health and/or the Department of Education, the universal mask mandates contained in the Department of Health's August 31, 2021 Order and the Respondent's Covid-19 Mitigation Plan are invalid and unlawful and should be restrained.

**II.  The August 31, 2021 Order Violates the Free Exercise of Religion Clause.**

Even if the Acting Secretary had the authority to mandate masks in schools, the August 31, 2021 Order – as it is written and applied – violates the Free Exercise Clause's mandate of neutrality towards religion because it creates categorical exemptions for secular (*i.e.*, medical exemptions) motivations, but not religious motivations. As such, the government's selective,

7

discriminatory application of the August 31, 2021 Order cannot survive the heightened scrutiny applied as the August 31, 2021 Order is not narrowly tailored to advance its proffered interest in protecting children from the spread of COVID-19.

Under the Free Exercise Clause, a challenged government action can prompt either strict scrutiny or rational basis review.  If the government action challenged is "neutral" and "generally applicable" and only burdens religious conduct incidentally, then the Free Exercise Clause offers no protection – and the government's action will be subject to rational basis review. *See, e.g.*, *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990) (holding that a criminal law prohibiting the use of illicit drugs was generally applicable, and merely had the incidental effect of burdening the Native American Church's ingestion of peyote for sacramental purposes, and thus did not violate the Free Exercise Clause).  Conversely, when the object of a law is to infringe upon or restrict religious practices because of its religious motivation, then the law is not neutral – and it will be determined to be invalid unless it is justified by a compelling government interest and is narrowly tailored to advance that interest. *See Tenfly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002) (citing *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

Further, "the Free Exercise Clause's mandate of neutrality towards religion prohibits the government from 'deciding that secular motivations are more important than religious motivations.'" *See Tenfly Eruv Ass'n,* 309 F.3d at 165 (quoting *FOP Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999)).  For example, in *FOP Newark Lodge No. 12*, the Third Circuit examined the constitutionality of the Newark Police Department's "no-beard" policy—which was allegedly designed to promote uniformity and safety—that allowed medical exemptions for officers to wear a bear, but denied similar religious exemptions to two officers

whose faith required them to grow beards.  *See* 170 F.3d at 360.  In its analysis of the Supreme Court's Free Exercise Clause jurisprudence, the Third Circuit stated the following:

> It is clear . . . that the Court's concern was the prospect of the government's deciding that secular motivations are more important than religious motivations.  ***If anything, this concern is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individual with a religious objection.***  *See generally Lukumi*, 508 U.S. at 542 ("All laws are selective to some extent, but *categories* of selection are of paramount concern when a law has the incidental effect of burdening religious practice.") (emphasis added).

*See FOP Newark Lodge No. 12*, 170 F.3d at 365 (emphasis added).  The Third Circuit determined that the police department's choice to permit medical exemptions, but *not* religious exemptions, was "sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny." *See id.*  Ultimately, the Third Circuit determined that the police department's decision to provide a medical exemptions, but not a religious exemptions, indicates a "value judgment that secular (*i.e.*, medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not" and could not offer any legitimate explanation for this policy decision.  *See id.* at 366.  The police department argued that other officers and citizens may have difficulty identifying a bearded officer as a genuine police officer, which may undermine safety.  *Id.*  While the Third Circuit recognized that safety is a legitimate government interest of the greatest importance, the Court ultimately determined that police department's policy was not tailored to serve that interest because there was no reason why permitting officers to wear beards for religious reasons should create any greater difficulties to promote uniformity and safety than those officers who were permitted to wear a beard for medical reasons.  *Id.*  Thus, the police department's policy violated the Free Exercise Clause.

Here, the August 31, 2021 Order should be subject to heightened scrutiny due to its creation of a categorical exemption for secularly motivated conduct (*i.e.*, a medical exemption),

9

but refusal to permit a similar exemption for religiously motivated conduct. Section 3(B) of the August 31, 2021 Order provides a medical exemption for individuals where "wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impeded breathing, a mental health condition or a disability." *See* Exhibit B. However, the August 31, 2021 Order does not provide a similar exemption for individuals objecting to the mask mandate for religious reasons. Similar to the police department's no-beard policy in *FOP Newark Lodge No. 12*, the Pennsylvania Department of Health's ("DOH") value judgment regarding individuals' secular (*i.e.,* medical) objections to not wearing a mask versus individuals' religious objection to not wearing a mask is sufficiently suggestive of discriminatory intent and triggers heightened scrutiny. Notably, section 4(A)(5)(c) of the August 31, 2021 Order specifically states that "[a] School Entity should not . . . violate other laws, including state and federal anti-discrimination laws" when enforcing this mask mandate. This section certainly should apply to the fundamental right to exercise religion guaranteed by the United States Constitution and other anti-discrimination statutes.

The August 31, 2021 Order cannot survive this heightened scrutiny as the refusal to permit religious exemptions (seeking the precise exception as those individuals seeking medical exemptions from the mask mandate) clearly is not narrowly tailored to advance its proffered interest in protecting children from their increased risk of COVID-19. While the DOH's interest in preventing the spread of COVID-19 to children may be legitimate, there is no legitimate reason that an individual exempt from wearing a mask for medical reasons does not pose a potential spread of COVID-19 any less than an individual exempt from wearing a mask for religious reasons. As such, the August 31, 2021 Order violates the Free Exercise Clause as its selective application singles out religiously motivated conduct for discriminatory treatment, and

10

thus, cannot survive the heightened scrutiny applied to such discriminatory laws because the August 31, 2021 Order is not narrowly tailored to advance its proffered interest in protecting children from their increased risk of COVID-19.

### III. <u>Face Coverings are Not Authorized Medical Devices</u>

The plain language of the August 31, 2021 Order and the Respondent's COVID-19 mitigation plan indicate the intent of the mask mandate is to prevent the spread of COVID-19. Accordingly, masks and face coverings fall within the definition of a medical device as set forth by the FDA:

> An instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including a component part, or accessory which is:
> 1. recognized in the official National Formulary, or the United States Pharmacopoeia, or any supplement to them,
> 2. intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
> 3. intended to affect the structure or any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its primary intended purposes.

Section 201(h), Food Drug and Cosmetic Act.

There is a lack of evidence supporting the efficacy of masks to prevent the transmission of COVID-19 and the safety of wearing masks. The August 31, 2021 Order and Respondent's COVID-19 mitigation plan both refer to the guidelines provided by the CDC; however, Those guidelines are not supported by rigorous study and testing of the effects and effectiveness of wearing a mask or face covering.

There are serious grounds to question the safety and efficacy of mask wearing with respect to preventing the spread of COVID-19. Numerous articles and studies arrive at the conclusion that mask wearing is not effective and is potentially harmful. There have been

incidences of masks causing increased anxiety, respiratory issues, and even losing consciousness. It is unclear whether the risks associated with wearing a face covering or mask has been considered by the Secretary or Respondent.

The FDA requires an approval process for medical devices, which involves testing the safety and efficacy of products. There is no evidence that any mask has undergone FDA approval process; accordingly, the Secretary and Respondent are effectively mandating that students wear an unapproved medical device. In issuing this broad mandate, neither the Secretary nor the Respondent seeks to obtain informed consent from the individuals and parents or minor children.

Notably, the Emergency Usage Authorization ("EUA") authority (which permits the FDA to authorize unapproved medical products or unapproved uses of approved medical products) requires the Secretary of HHS to declare that emergency use authorization is appropriate; that individuals must be informed of the potential benefits and risks to the extent the benefits and risks are known; and that individuals must be informed of the consequences of refusal and the benefits and risks of available alternatives; and that individuals must have the option to accept or refuse the use of the product. 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III). In the instant case, students have not been provided with the known benefits and risks of wearing mask and facial coverings, nor has it been disclosed to what extent the risks and benefits are known. They have not been given the option to refuse wear a mask, except by qualifying under one of the exceptions enumerated in August 31, 2021 Order – which notably does not include a religious exemption as detailed in the previous section.

The August 31, 2021 Order and the Respondent's COVID-19 mitigation plan both seek to require all individuals, including minor students, in the school buildings wear a mask with limited exception. As the masks and facial coverings are used with the intent to prevent and/or

mitigate the spread of COVID-19, they qualify as medical devices under federal law. In enacting the mask mandates, the Secretary and Respondent have not obtained informed consent or appropriately disclosed the risks and benefits of wearing masks. Further, it appears the risks and potential dangers of requiring masks and facial coverings has not been considered.

## IV.     Test for Injunctive Relief

The test for preliminary relief is a familiar one.  A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.  *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999); *accord*, Ambrogi v. Reber, 932 A.2d 969, 976 (Pa.Super. 2007).

The harm caused by the August 31, 2021 Order and the Respondent's Covid-19 Mitigation Plan is immediate because it occurs every school day.  The harm caused by the August 31, 2021 Order and the Covid-19 Mitigation Plan is irreparable because the loss or even partial loss of a child's right to a free public education cannot be adequately compensated by money damages.  Likewise, the loss of the right of adhering to one's religious beliefs cannot be adequately compensated by money damages.  Neither can the unjustified loss of medical privacy rights under HIPAA nor the potential harm of exposure to unapproved medical devices.

The harm caused by the August 31, 2021 Order and the Covid-19 Mitigation Plan is substantial because it is cumulative.  Each day a child misses school puts them further behind, makes it harder or impossible to qualify for team sports and organized activities, reinforces discrimination against sincere religious objections to face coverings; and increases the health risks of using unapproved medical devices. .

13

Refusing the requested injunction will cause greater injury than granting it, for at least two reasons:

(a) the August 31, 2021 Order and the Respondent's Covid-19 Mitigation Plan are beyond the powers delegated to the Department of Health and the Respondent and are therefore unlawful. The unlawful exercise of power is not in the public interest, cannot be excused, and must be restrained.

(b) where a public health control measure is not lawful, there can be no compelling reason to justify withholding a areligious exemption while granting exemptions for secular activities or imposing conditions that single out religious objectors for disparate treatment.

Granting the requested injunction will restore the status quo before the August 31, 2021 Order and the August 23, 2021 Covid-19 Mitigation Plan took effect. Petitioners believe that they are likely to prevail on the merits of each count of their complaint for declaratory judgment, for the reasons set forth in the complaint, the attached affidavits, and the accompanying brief.

A request for an immediate hearing is included with Petitioners' Application for Special Relief along with proof of notice to the Respondent's counsel.

Respectfully submitted,

*[signature]*

**Obermayer Rebmann Maxwell & Hippel LLP**
Gary M. Samms, Esq. (#58096)
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101
(215)-665-3054
*Attorney for Petitioners*

14