**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALICIA GEERLINGS, as the Parent and/or** | : | |
| **Natural Guardian of QWG, a minor** | : | |
| **and** | : | |
| **ANDREW McLELLAN, as the Parent and/or** | : | **Civil Docket No. 2:21-cv-04024** |
| **Natural Guardian of HM, a minor** | : | |
| **and** | : | |
| **SARAH MARVIN, as the Parent and/or** | : | |
| **Natural Guardian of HA, a minor** | : | |
| **and** | : | |
| **DAVID GOVERNANTI, as the Parent and/or** | : | |
| **Natural Guardian of SG, a minor** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TREDYFFRIN/EASTTOWN SCHOOL** | : | |
| **DISTRICT,** | : | |
| | : | |
| **Defendant.** | : | |

**TREDYFFRIN/EASTTOWN SCHOOL DISTRICT'S RESPONSE IN**
**OPPOSITION TO PLAINTIFFS' REQUEST FOR A TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Tredyffrin/Easttown School District (the "District") should not be restrained nor enjoined

from enforcing the Order issued by the Pennsylvania Department of Health (DOH) that requires

everyone to wear a mask in all PreK-12 schools in the Commonwealth.  The Order (the "Order"

or "DOH Order") is **Exhibit 1** hereto.  Plaintiffs, four parents of four students in the District,

have not asserted any facts that could allow this Court to hold that Plaintiffs are likely to succeed

on the merits of their claims that: (1) the DOH lacked the authority to issue the DOH Order; or

(2) the DOH Order and the District's mandatory enforcement of the DOH Order infringes on

Plaintiffs' unasserted and unidentified medical conditions or religious beliefs.[1] Indeed, several courts, including the U.S. Supreme Court and the Sixth Circuit, have already held that injunctions are not appropriate in cases like this.

In addition, Plaintiffs cannot establish that they are likely to succeed on the merits of their claims because, *inter alia*: (1) Plaintiffs did not join DOH or its Acting Secretary, necessary parties to this litigation; (2) Plaintiffs cannot show that DOH lacked the requisite authority to issue the Order; (3) this Court should abstain on even considering the DOH's authority because that issue is currently before the Commonwealth Court;[2] and (4) Plaintiffs lack standing because they have not alleged any particularized individual injuries nor any sincerely held religious beliefs.  Further, Plaintiffs cannot establish the remaining elements necessary for a TRO and injunction.  For example, Plaintiffs cannot show an irreparable injury because at least three of the students wore masks last year for some activities, and all of the students wore masks at some point this school year.  Likewise, it is obvious that granting preliminary relief will result in greater harm to the District and the public in general, and is not in the public interest, because it is likely to increase the spread of the virus, which could lead to the closing of schools within the District, among other mitigation measures.

Like we are seeing all over the United States right now, it is clear that Plaintiffs have strong political objections to mask mandates, and are using the District and this litigation to vent

---

[1] Pursuant to Plaintiffs' gofundme.com webpage, attached as **Exhibit 2**, Plaintiffs' issues with the DOH Order and masking in general appear to be political and not based on any specific medical conditions or religious beliefs.

[2] The Republican leader of the Pennsylvania Senate and a group of parents filed a lawsuit in the Commonwealth Court on September 3, 2021, seeking an injunction against the Order. The Commonwealth Court has scheduled a hearing for September 16, 2021. The Docket is attached as **Exhibit 3**.

their political frustrations.  But Plaintiffs' political frustrations are not a sufficient bases for this

Court to enjoin the enforcement of the Order.  Accordingly, and for the reasons more fully set

forth herein, Plaintiffs' instant request for a TRO and injunction should be denied.

## I.      FACTUAL BACKGROUND

### A.      The DOH Order.

On August 31, 2021, in response to the COVID-19 pandemic and the rise of the Delta

variant, the Acting Secretary of DOH the DOH Order requiring "face coverings"[3] to be worn in

all schools, "including school districts, brick and mortar and cyber charter schools, private and

parochial schools, career and technical centers, intermediate units, and early learning and other

child care settings." *See* Ex. 1 and Pennsylvania Department of Education (PDE) Guidance

"Answer to FAQ" (attached as Exhibit 4). The Order went into effect on Tuesday, September 7,

2021, and will remain in effect until otherwise terminated. *See* Exhibit 1, p. 6. The Order

specifically requires that "each teacher, child/student, staff, or visitor working, attending, or

visiting a School Entity shall wear a face covering indoors, regardless of vaccination status"

except as provided in a specific exemption. *See* Exhibit 1, p. 4. Because Plaintiffs are students at

the District, this Response will focus on the Order as applied to the District's students.

The DOH Order enumerates eight exceptions to the face covering requirement. *See* Ex. 1

pp. 4-5.  The majority of the exceptions are temporal in scope, simply allowing a student to

---

[3] According to the Order, "'Face covering' means covering of the nose and mouth with material
that is secured to the head with ties, straps, or loops over the ears or is wrapped around the lower
face. A 'face covering' can be made of a variety of synthetic or natural fabrics, including cotton,
silk, or linen. A 'face covering' may be factory-made, sewn by hand, or be improvised from
household items, including, but not limited to, scarfs, bandanas, t-shirts, sweatshirts, or towels.
While procedural and surgical masks intended for health care providers and first responders,
such as N95 respirators, meet those requirements, these specialized masks should be reserved for
appropriate occupational and health care personnel." *See* Ex. 1, p. 3.

"remove" a face covering in limited circumstances for a short period of time, including when working alone and isolated, eating and drinking, and participating in sports. *See* Exhibit 1, pp. 4-5; Exhibit 4, pp. 2-3. (Question - Under what circumstances are students permitted to remove their face coverings?). The Order includes a medical exception permitting the District to exempt students from wearing a face covering:

> If wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability.

*See* Exhibit 1, p 4.  The Order explicitly requires that the District "exhaust" "all alternatives to a face covering, including the use of a face shield" before granting an exception. *See* Exhibit 1 p. 4. Importantly however, under the Order a "face shield" is not a "face covering," but rather, an "alternative to a face covering" because:

> The Centers for Disease Control and Prevention (CDC) has advised there is currently not enough evidence to determine how much protection a face shield provides to individuals around the person wearing the face shield because of gaps where respiratory droplets may escape. The CDC does state, however, that ***face shields may still be an option in situations where wearing a cloth face covering is not otherwise feasible***.

*See* Exhibit 1, p. 3 (emphasis added).

To determine whether a student qualifies for the "medical exception" (or seemingly whether an alternative to a face covering is appropriate), PDE directed the District to "follow their established processes for determining student eligibility" under Section 504 of the Rehabilitation Act or the  Individuals with Disabilities Education Act ("IDEA") "for such medical or mental health condition or disability." *See* Exhibit 4, p. 4 (Question - *Are individuals required to show proof of an exception to the Order?).  The IDEA and Section 504 require the District to consider medical information from a student's medical provider. *See* 34 CFR § 300.304(4) (requiring that "the child is assessed in all areas related to the suspected disability,

including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities."); 34 CFR § 104.35(c) ("In interpreting evaluation data and in making placement decisions, a recipient shall (1) draw upon information from a variety of sources, including aptitude and achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior, (2) establish procedures to ensure that information obtained from all such sources is documented and carefully considered, (3) ensure that the placement decision is made by a group of persons, including persons knowledgeable about the child, the meaning of the evaluation data, and the placement options, and (4) ensure that the placement decision is made in conformity with 104.34."). Additionally, Pennsylvania law states that "parents should include available relevant medical records along with their written request for the provision of services" when requesting that the District evaluate the student under Section 504. *See* 22 Pa. Code § 15.6(b).

**B.     PDE  Requires Strict Enforcement of the Order by the District at the Risk of Significant Consequences.**

After the DOH issued the Order, PDE issued explicit and assertive regulations, requiring the District to enforce the Order.  PDE characterizes the Order as a "legal mandate" and specifically states that "school entities are expected to enforce the Order as they do other state laws and school rules and policies." *See* Exhibit 4, p. 4  (Question - *What should a school entity do when an individual, who does not meet the allowable exceptions, refuses to wear a mask?).

PDE has also listed consequences for not complying with the Order —

**What are the potential consequences if a school entity fails to comply with the Order?**

***School officials*** who fail to adhere to the order could ***lose the protection of sovereign immunity*** and may ***personally face lawsuits*** from those who may be affected by any official's attempt to ignore the order.  Failing to implement or follow the control measures may ***expose individuals to personal liability*** under 42 Pa.C.S § 8550 (relating

to willful misconduct), as well as other remedies as provided by law. Failure to implement and follow the control measures under the Order also subjects a person to the ***penalty provisions of the Disease Prevention and Control Law of 1955***.
Non-compliance with the Order for child care providers licensed by the Department of Human Services will be cited under 55 Pa. Code §3270.14, §3280.14 (relating to compliance with pertinent laws and regulations) as well as 55 Pa. Code §3270.21, §3280.20, and §3290.18 (relating to general health and safety).

*See* Exhibit 4, p. 3.

On September 8, 2021, the day Plaintiffs commenced this action, the Chester County Intermediate Unit issued new guidance to the District stating that PDE has and will issue warnings to boards of school directors that do not comply with the DOH Order. PDE, through the CCIU, cautioned the District that if they fail to enforce the DOH Order board members could face liability under the 42 Pa.C.S.A. § 8550, and other repercussions, including but not limited to, reference to the United States Department of Education's Office for Civil Rights. *See* Exhibit 5. Indeed, as of August 30, 2021, the Department of Education's Office of Civil Rights opened investigations in five states that explored whether state officials who prohibited face masking indoors violated federal law. *See* Exhibit 6. In particular,

"OCR sent letters [] to the chief state school officers of Iowa, Oklahoma, South Carolina, Tennessee, and Utah, outlining how prohibitions of universal indoor masking prevent school districts from implementing health and safety policies that they determine are necessary to protect students from exposure to COVID-19, including those with underlying medical conditions related to their disability. OCR is concerned that state mask restrictions on schools and school districts "may be preventing schools…from meeting their legal obligations not to discriminate based on disability and from providing an equal educational opportunity to students with disabilities who are at heightened risk of severe illness from COVID-19," the letter states.

*See* Exhibit 6.

Most recently, on Friday September 10, 2021, PDE issued additional guidance, again emphasizing that the District must comply with the Order and failure to do so may expose the District to liability. *See* Exhibit 7. The email from PDE included a link to a letter sent to an

unnamed District that is "flagrantly violating and does not intend to comply with the Order." *See* Exhibit 8.  Additionally, PDE addressed the medical exception and emphasized that (1) the masking requirement is not optional under the Order; (2) accepting a parent's request for an exemption without supporting evidence that a student has a qualifying medical, mental health condition, or disability violates the Order; and (3) a parent's opposition to the Order is not a recognized exception. *See* Exhibit 7. PDE stated —

> Relatedly, this Order is not a mask optional policy. ***Any school entity simply permitting a parent's sign-off without evidence that the student has a medical or mental health condition or disability that precludes the wearing of a face covering is not in compliance with the Order***. Under the Order, and as set forth in PDE's Answers to FAQs, school entities must require all individuals, two years of age and older, to wear face coverings unless the individual has a medical or mental health condition or disability that precludes the wearing of a face covering. In accordance with Section 3 of the Order, before an individual is excepted from the Order, all alternatives to a face covering, including a face shield, are to be exhausted. It is recommended that any exception be in accordance with eligibility under Section 504 of the Rehabilitation Act or IDEA for such medical or mental health condition or disability. School entities should follow their established processes for determining student eligibility under those laws, including any medical documentation that they would normally require. There are exceptions to the Order; however, a parent's opposition to the Order is not one of them.

*See* Exhibit 7.

     **C.**     **The District has an Established Process to Implement Requests for Exceptions to the DOH Order.**

In evaluating whether a student is eligible for special education services pursuant to an IEP under the IDEA or a 504 Agreement under Section 504, the District routinely requests medical information from the student's medical provider. The District also routinely requests that the student's parents sign a release, enabling the District to communicate directly with the medical provider.  This is entirely consistent with the DOH Order and guidance from PDE.

For students requesting medical exceptions to face coverings, the District requests the student's medical provider to state whether the student's wearing of a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability and to specify the student's applicable medical condition, health condition, or disability. The District also requests that the student's parent allow the District to communicate with the medical provider. Requesting such information is consistent with the District's special education practice and allows the District to correctly and fairly evaluate whether a student qualifies for an exception. The District is aware that at least one "medical practice" has issued[4] a blank medical exemption/exception for families to submit to the District to request an exemption under the Order. *See* Exhibit 9. That exemption/exception form is actually a complaint about face coverings, CDC guidance, and more, opposed to an individual determination of the medical impact face coverings have on the student subject to the exemption/exception.  Thus, there is a clear need to ensure that the District has specific information about a student's medical condition, health condition, or disability.

### D.     Plaintiffs Have not Identified any Medical Condition or Religious Beliefs.

No Plaintiff has provided any information or documentation of a medical condition, health condition, or disability that could be impacted by face coverings.  And no Plaintiff has provided evidence of a closely held religious belief.  Moreover, three of the students at issue wore face mask during the 2020-2021 school year, and all wore masks at some point during the current school year.

---

[4] As of 9/12/21, the form was no longer linked on the medical practice's website; however, the District has included a copy of the website as of 9/9/21, when the form was linked to the homepage as part of Exhibit 9.

{02430166v3 }

## II.     ARGUMENT

### A.     PLAINTIFFS CANNOT SATISFY THE VERY HIGH STANDARD NECESSARY FOR THIS COURT TO ISSUE A TRO OR A PRELIMINARY INJUNCTION. [5]

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). ". . . [U]pon an application for preliminary injunction, to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937). There are four factors to consider in ruling on a motion for preliminary injunction: "(1) whether the movant has shown a probability of success on the merits; (2) whether the movant will be irreparably injured if relief is denied; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief is in the public interest." *Crissman v. Dover Downs Ent. Inc.*, 239 F.3d 357, 364 (3d Cir. 2001).  As discussed below, not one of the four factors weighs in Plaintiffs' favor.

Indeed, other courts have refused to grant preliminary injunctions on the grounds that the COVID-19 pandemic is an emergency situation during which "summary administrative action" is appropriate. *Hernandez v. Grisham*, 508 F.Supp.3d 893, 979–80 (D.N.M. 2020) (collecting cases).  In denying a plaintiff's request to preliminarily enjoin COVID-19 restrictions related to religious worship, Chief Justice Roberts wrote:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect.  When those officials undertake to act in areas fraught

---

[5] The only difference between a temporary restraining order and a preliminary injunction is notice.  Fed. R. Civ. P. 65.; *Corp. Synergies Grp., LLC v. Andrews*, 775 Fed.Appx. 54, 61 (3d Cir. 2019).

> with medical and scientific uncertainties, their latitude must be
> especially broad. Where those broad limits are not exceeded, they
> should not be subject to second-guessing by an unelected federal
> judiciary, which lacks the background, competence, and expertise
> to assess public health and is not accountable to the people.
>
> That is especially true where, as here, a party seeks emergency relief
> in an interlocutory posture, while local officials are actively shaping
> their response to changing facts on the ground.

*S. Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1614, 207 L.Ed.2d 154 (2020)

(internal citations and punctuation omitted).  When the case will require a "fact-intensive"

inquiry that is "subject to reasonable disagreement" it is inherently inappropriate for imposition

of a temporary restraining order. *Id.*

### 1.      Plaintiffs are Not Likely to Succeed on the Merits of Their Claims.

The Sixth Circuit recently considered and rejected a strikingly similar request for TRO in

*Resurrection Sch. v. Hertel*, No. 20-2256, 2021 WL 3721475 (6th Cir. Aug. 23, 2021). In

*Resurrection,* the plaintiffs, a catholic elementary school and two parents of students enrolled in

the school, filed for a TRO and preliminary injunction seeking to enjoin state officials from

enforcing a public health order that required all persons five years and older to wear a mask

indoors while attending private and public K-12 schools. *Id.* at 1, 5-6. The first parent claimed

mask wearing negatively affected his child's ability to pay attention and engage with religious

instruction at Resurrection. *Id.* at 5. The second parent claimed that her child was unable to wear

a mask because of breathing issues, but her child's pediatrician determined that the child did not

qualify for an exemption. *Id.* The public health order contained "universal" exceptions, including

medical intolerance, eating and drinking, swimming, and receiving a medical treatment that were

available to the students. *Id.* at 13. However, the plaintiffs alleged that that the Order violated

their rights to free exercise, equal protection, and substantive due process.  *Id.* at 5-6.

The court denied the plaintiffs' motion for a preliminary injunction because the plaintiffs were unlikely to succeed on the merits of the free-exercise and equal protection claims. *Id.* at 6. The Sixth Circuit affirmed the trial court's denial of the preliminary injunction for both claims (and a substantive due process claim). For the free exercise claim, the Sixth Circuit held that the public health orders were subject to rational-basis review (and not strict scrutiny) because the order was "neutral and of general applicability" because it applied to all children in Michigan schools; it was "not so riddled with secular exceptions as to fail to be neutral and generally applicable"; and the exceptions were "narrow and discreet." *Id.* at 13. Under rational basis review, a public entity need only show that the regulation "'bear[s] some rational relation to a legitimate state interest.'"[6] (internal citations omitted). Applying the standard, the Sixth Circuit held that order was rationally related to a legitimate government interest – controlling the spread of COVID-19. *Id.* at 15.

Here, the facts alleged by Plaintiffs are nearly identical to those in *Resurrection* – a health department issued a face masking requirement for all schools that includes universal, and narrowly tailored exceptions (i.e. eating and drinking). Thus, the Order here is also subject to rational basis review because it is of neutral and of general applicability. In applying rational basis review, it is clear that the DOH Order bears relation to a legitimate state interest – curbing the spread of COVID-19, as the Delta variant proves that it is extremely contagious, including

---

[6] The above-cited rational basis test is derived from *Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002); however, the rational basis test as cited above is also applied by the Third Circuit. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 284 (3d Cir. 2009) ("Under the Supreme Court's decision in *Smith*, a neutral, generally applicable law is subject only to rational-basis review, which 'requires merely that the action be rationally related to a legitimate government objective.'") (internal citation omitted).

among children. *See* Exhibit 10. Thus, Plaintiffs will not succeed on the merits of their free exercise claim.

Plaintiffs rely on *FOP Newark* to allege that strict scrutiny should be applied.  But the facts of that case are far different than the facts here. In *FOP*, the police department denied a religious exemption <u>after the plaintiffs, devout Sunni Muslims who sincerely believed that they were under a religious obligation to grow their beards</u>, and "made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not." 170 F.3d 359, 366 (3d Cir. 1999). Importantly, at no time before or after the Order, or even now in this litigation, have Plaintiffs ever identified any religious belief that somehow does not permit the wearing of masks.  Three of the students wore face masks during the 2020-2021 school year either during in-person instruction or during District-related sporting events.

> ### a.   Plaintiffs Failed to Join a Necessary Party – the DOH and/or the Acting Secretary of DOH.

Plaintiffs are also not likely to succeed because they failed to join a necessary party, the Acting Secretary of Health and DOH. A person satisfies the definition of a "necessary party" when "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." Fed. R. 19(a)(2 (a)(2).  Administrative agencies are typically necessary and indispensable parties when their decisions are under review.  *See e.g. Queens County Group of Sav. & Loan Ass'ns v. Home Loan Bank Bd.*, E.D.N.Y.1952, 104 F.Supp. 396 (the Board was indispensable party in action for seeking declaratory judgment that its actions were illegal); *Hartmann v. Fed. Reserve Bank of Philadelphia*, 55 F.Supp. 801, 809 (E.D. Pa. 1944) (collecting cases) (Secretary of the Treasury was indispensable to action against

bank to unfreeze bank account that had been frozen by Secretary of Treasury.); *McQuilken v. A & R Dev. Corp.*, 510 F.Supp. 797, 802 (E.D. Pa. 1981).  By issuing its August 31, 2021, Order, the DOH claimed an interest in the matter that is squarely the subject of this litigation.  Because they have an interest in the subject of this litigation, and disposition of this matter without their presence will impede their ability to protect that interest, this matter must not proceed unless the Secretary and DOH are parties.

           **b.**       **The DOH and/or the Acting Secretary of DOH had Authority to Issue the Order.**

The Plaintiffs are also not likely to succeed because the Acting Secretary and DOH had the authority to take any disease control measure appropriate to protect the public from the spread of infectious disease. *See* 35 P.S. § 521.5; 71 P.S. §§ 532(a), and 1403(a); 28 Pa. Code § 27.60.  DOH  properly exercised that authority in requiring face coverings for the Commonwealth's vulnerable and largely unvaccinated population of school children**.**

           **c.**       **This Court Should Abstain from Ruling on the Issue.**

Abstention is appropriate because the question of the Secretary of Health's authority to issue its August 31, 2021 Order is pending before a state judge in another matter. On September 8, 2021, the Attorney General for the Commonwealth of Pennsylvania responded to a petition for preliminary injunction in the matter of *Jacob Doyle Corman, III et al., v. Acting Secretary of the Pennsylvania Dept. of Health*, Commonwealth Court of Pennsylvania, No. 291 MD 2021. Corman's petition for preliminary injunction seeks to invalidate the Secretary's Order, requiring students to wear face coverings. A preliminary injunction hearing is scheduled for September 16, 2021.

A federal court may stay or dismiss a pending federal action when there is a parallel ongoing state court proceeding.  See *Colorado River Water Conservation District v. United*

*States*, 424 U.S. 800, 96 S.Ct 1236, 47 L.Ed.2d 483 (1976).  Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244 (1976). Because a parallel state court proceeding commenced prior to the filing of this action will answer the question of the Department of Health's authority to issue the order, this matter should be stayed or dismissed pending the outcome of the proceedings before the Commonwealth Court.

### d.    Plaintiffs Lack Standing.

Plaintiffs are not even likely to establish that they have standing to bring their claims. Article III courts can only adjudicate live "cases" and "controversies"—disputes that can be "appropriately resolved through the judicial process" as opposed to the political or legislative spheres.  *Parker v. Wolf*, 506 F.Supp.3d 271, 291 (M.D. Pa. 2020) citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).   Standing requirements originate from the doctrine of separation of powers and serve to prevent the judicial process from being used to usurp the powers of the political branches.  *Parker v. Wolf*, 506 F.Supp.3d 271, 280 (M.D. Pa. 2020).  Plaintiffs do not have standing for two independent reasons; (1) they do not have particularized individual injuries; and (2) they failed to allege a sincerely held religious belief.

### e.    Plaintiffs do not Assert Particularized Injury.

Plaintiffs do not have a particularized or redressable injury because the injuries, if any, caused by face coverings are identical to those suffered by every other school child in the Commonwealth of Pennsylvania. Article III standing requires an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185

L.Ed.2d 264 (2013). These requirements originate from separation-of-powers principles and ". . . prevent the judicial process from being used to usurp the powers of the political branches." *Parker v. Wolf*, 506 F.Supp.3d 271, 280–81 (M.D. Pa. 2020) *citing Clapper* at 408, 133 S.Ct. 1138.

For an injury to be particularized, the alleged injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.  A law that does not distinctly affect the plaintiff, but is common to all members of the public cannot support standing. *See Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 349 (3d Cir. 2020).  Here, because the Order does not distinctly affect Plaintiffs, but affects all school-aged children in the state of Pennsylvania it is undifferentiated and common to all members of the public, and therefore cannot support standing.  *See Parker v. Wolf*, 506 F.Supp.3d 271, 287–88 (M.D. Pa. 2020) (refraining from enjoining enforcement of Governor Wolf's mask mandate.)

> **f.      Plaintiffs Failed to Plead a Sincerely Held Belief that is Religious in Nature.**

As discussed above, Plaintiffs have not pleaded a sincerely held religious belief.  The Free Exercise Clause of the First Amendment of the federal Constitution guarantees the freedom of religious belief. To be entitled to relief under the First Amendment and Equal Protection clause, "a court must first 'decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things.'" *Daley v. Lappin*, 555 F. App'x 161, 164 (3d Cir. 2014) (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1029–30 (3d Cir.1981)). To determine whether a belief is religious in nature, a court must determine whether a belief is "based on purely secular considerations" or "rooted in religious belief."  *See Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in

religious belief."). In *Yoder*, the Supreme Court held that Wisconsin's compulsory attendance laws for children up to the age of sixteen violated the free exercise of the Amish religion. *Id.* In doing so, the Court relied upon the record facts that demonstrated that the "way of life of the Amish is not merely a matter of personal preference, but one of deep religious conviction." *Id.* at 215-16 (emphasis added). The Court distinguished the way of life founded upon the religious beliefs of the Amish faith from a "way of life, however virtuous and admirable, … based upon purely secular considerations" which would not be entitled to constitutional protection. *Id.* at 215. Indeed, there may be times when a "litigant[] can make no credible showing that the affected practice is either central or important in their religious scheme." *Len Combs v. Homer Ctr. Sch. Dist.*, 468 F. Supp. 2d 738, 770 (W.D. Pa. 2006), *aff'd in part, vacated in part, remanded*, 540 F.3d 231 (3d Cir. 2008) (per curiam), *cert. denied*, 129 S. Ct. 1013 (2008) (internal citations omitted). "In such cases, the de minimis burden imposed by the challenged law is not constitutionally cognizable." *Id.* In determining whether a plaintiff has asserted religious beliefs courts —

> may also consider whether the litigants' beliefs find any support in the religion to which they subscribe, or whether the litigants are merely relying on a self-serving view of religious practice…. This inquiry is not a matter of deciding whether appellants' beliefs accord in every particular with the religious orthodoxy of their church…. . Nor is it a matter of adjudicating intrafaith differences in practice or belief.... Instead, a court may determine whether the litigants' views have any basis whatsoever in the creed or community on which they purport to rest their claim.

*Id.*

Here, Plaintiffs have never told the District what religious beliefs or religious practice is impacted mask wearing. They have not even asserted one in the Complaint. Thus, Plaintiffs have no sincerely held religious belief that is impacted by the Order. Even if Plaintiffs articulate a sincerely held belief that is religious in nature, Plaintiffs failed to plead how the Order infringes upon that belief.

> g.    **The District has the authority to issue its Health and Safety Plan and to require masking.**

Plaintiffs admit in their Complaint that, "the August 31, 2021 Order apparently supersedes the School District's Covid-19 Mitigation Plan. However, if the August 31, 2021 Order is found to be invalid, it is likely that the School District will resume enforcing the Covid-19 Mitigation Plan." (Doc 1, p. 8 ¶35). Thus, because the Order is in effect, the Health and Safety Plan is not at issue. Further, there is no showing that the Order will become invalid soon, creating no exigent circumstance that would warrant grant of a TRO or injunction.

Regardless, the District has the authority to implement masking under its Health and Safety Plan. *See* Section 2001(i)(1) of the American Rescue Plan ("ARP") (requiring Districts to implement health and safety plans) and 24 P.S. §5-510 ("the board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs…").

> h.    **The Court should ignore Plaintiffs' argument that face coverings are medical devices subject to FDA approval because it is utterly irrelevant to the proceeding, and it is factually inaccurate.**

It is unclear why Plaintiffs include this argument based on FDA certification of medical devices. It has no bearing on their claim on their argument that their children should not be required to wear face coverings to school because face coverings have not been approved by the FDA.  This argument is legally and factually erroneous.  First the FDA did not rely upon 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III) to issue its Enforcement Policy for Face Masks and Respirators During the Coronavirus Disease (COVID-19) Public Health Emergency (Revised) Docket No. FDA-202-D-1138. Instead, the FDA relied upon section 701(h)(1)(C) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 371(h)(1)(C)) and 21 CFR 10.115(g)(2)),

which allows the FDA to set forth changes in "policy that are of more than a minor nature, complex scientific issues, or highly controversial issues" after either ensuring public participation, or determining that public participation is not feasible or appropriate.

Second, on a factual level, the FDA also has not approved clothes, and water bottles – devices that protect children from spreading germs, and dehydration respectively. However, there is no uproar about the District's requirement that student be clothed or its encouragement that students stay hydrated. No parent is arguing they shouldn't have to put pants on their children when sending them to school on the grounds that pants haven't been approved by the FDA, and no parent would question that the school district has a right to require students to wear clothes or bring water bottles to school. Likewise, the District can require students wear face coverings pursuant to the Order or another applicable policy / Health and Safety Plan.

### 2.    Plaintiffs will not Suffer an Irreparable Injury.

Plaintiff must show that the threat of injury-in-fact is "actual and imminent, not conjectural or hypothetical." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012). Plaintiffs have not alleged any imminent injury that is not conjectural or hypothetical. Indeed upon information and belief, three plaintiffs wore masks last year either during  in-person instruction (SG) or during sporting events (QWG and HM).

### 3.    Any potential harm to Plaintiff is Outweighed by Harm to the General Public.

In matters related to the Commonwealth of Pennsylvania's response to COVID-19, plaintiffs have been unable to show that their individual harm outweighs the "potential harm to the general public."  The court in *Phila. Rest. Owners Against Lockdown, LLC v. Kenney*, acknowledged that restauranteurs were likely to be harmed by Governor Wolf's May 19, 2020 order to stop non-essential business.  CV 20-5809, 2020 WL 6866560, at *1 (E.D. Pa. Nov. 20,

2020).  However, because the benefit to the public of slowing the spread of COVID-19 outweighed the potential harm to the plaintiffs, the court denied the restauranteurs' petition for temporary restraining order.  *Id.* Because, as discussed in the DOH Order, face coverings will help keep schools open by preventing the spread of COVID-19, the benefit to the Plaintiff of voiding the DOH Order is significantly lower than the benefit to the general public of enforcing the order.

### 4.    The Preliminary Relief Requested is not in the Public Interest.

When plaintiffs in *Minnesota Voters All. v. Walz* claimed mask rules harmed their ability to vote in person, the district court reasoned, "it is far more likely that enjoining enforcement of [the mask requirement] would seriously disrupt the upcoming election by discouraging voter turnout and limiting the number of people willing to staff polling places." 492 F.Supp.3d 822, 840 (D. Minn. 2020), *appeal dismissed*, 20-3072, 2020 WL 9211131 (8th Cir. Nov. 9, 2020).  Likewise, in the instant matter, if the face covering order is disrupted, numerous students who hardly feel safe going to school in the present environment may be unable to attend school, and teachers will be less willing to expose themselves to students, many of whom are ineligible for vaccination. Further, it is generally accepted that mask wearing slows the transmission of the virus.  If there is a significant enough uptick in transmission, students may have to quarantine and buildings may have to be closed.

Therefore, because Plaintiffs have not established any of the four criteria for a preliminary injunction, their motion for preliminary injunction should be denied.

{02430166v3 }

III.     **CONCLUSION**

Wherefore, Defendant requests that this Court deny Plaintiffs' Request for a TRO and

Preliminary Injunction.

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

460 Norristown Road, Suite 110
Blue Bell, PA  19422
(610) 825-8400
*Attorneys for Defendant*

**By:** *Brian R. Elias*
**Brian R. Elias, ESQUIRE**
PA Bar No. 82938

**By:** *Christina R. Gallagher*
**Christina R. Gallagher, ESQUIRE**
PA Bar No. 324579

**By:** *Deborah R. Stambaugh*
**Deborah R. Stambaugh, ESQUIRE**
PA Bar No. 325032

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALICIA GEERLINGS, as the Parent and/or Natural Guardian of QWG, a minor and ANDREW McLELLAN, as the Parent and/or Natural Guardian of HM, a minor and SARAH MARVIN, as the Parent and/or Natural Guardian of HA, a minor and DAVID GOVERNANTI, as the Parent and/or Natural Guardian of SG, a minor** : | |
| **Plaintiffs,** : | **Civil Docket No. 2:21-cv-04024** |
| **v.** : | |
| **TREDYFFRIN/EASTTOWN SCHOOL DISTRICT,** : | |
| **Defendant.** : | |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing RESPONSE IN OPPOSITION TO PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION was served upon all counsel of record via CM/ECF and email upon:

Gary Samms
Obermayer Rebmann Maxwell & Hippel LLP
gary.samms@obermayer.com

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

460 Norristown Road, Suite 110
Blue Bell, PA  19422

{02430166v3 }

(610) 825-8400
*Attorneys for Defendant*

**By:** *Brian R. Elias*
**Brian R. Elias, ESQUIRE**
PA Bar No. 82938


**By:** *Christina R. Gallagher*
**Christina R. Gallagher, ESQUIRE**
PA Bar No. 324579


**By:** *Deborah R. Stambaugh*
**Deborah R. Stambaugh, ESQUIRE**
PA Bar No. 325032